120　　　306
f 32 SC ¹ 46

PORTER KINPORTS v. JONATHAN BOYNTON.

ERROR TO THE COURT OF COMMON PLEAS OF CLEARFIELD COUNTY.

Argued April 18, 1888.—Decided May 7, 1888.

1. The lien of a judgment entered against the vendor of lands, holding the legal title as security for unpaid purchase money, will bind the estate of the vendor so long as the contract remains unexecuted and to the extent it is unexecuted.

2. An assignment by the vendor of the unpaid purchase money, with all his interest and legal estate in the land, as collateral security merely, is a valid mortgage thereof without regard to its form, but if unrecorded it is ineffective to the extent of the vendor's interest against a subsequent judgment creditor without notice.

3. In a scire facias to revive a judgment entered against such vendor after such an assignment, it is competent for the plaintiff to show, as against the assignee, that the debt represented by the judgment was prior in point of time to the assignment.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ., absent.

No. 53 January Term 1888, Sup. Ct.; court below, No. 54 September Term 1882, C. P.

On June 16, 1882, an alias writ of scire facias was issued to revive a judgment, No. 485 September Term 1876, in favor of Porter Kinports against G. R. Kinports, which was served upon Jonathan Boynton, terre tenant, and returned n. e. i. as to G. R. Kinports. On November 13, 1885, an appearance was entered for G. R. Kinports, and on November 17th, judgment was taken for want of an affidavit of defence, against the defendant and terre tenant, for $5,019.46. On January 16, 1886, upon a rule granted upon the petition and plea of Jonathan Boynton, averring that the judgment sought to be revived never was a lien on his land or any of it, and that he was not a terre tenant of any land bound by the judgment, it was ordered that the judgment entered against Jonathan Boynton be stricken off.

At the trial on September 6, 1887, on the plea referred to, the following facts appeared, stated in the order of their history :

On October 8, 1874, G. R. Kinports, owning in fee a tract of land, 265 acres of which lay in Clearfield and 150 acres in Cambria county, contracted to convey the same to Thomas Tozier for the sum of $22,500, portions of which were payable at ten, thirty and sixty days, and were paid, leaving a balance of $16,500 unpaid.

On March 9, 1875, to No. 378 March Term 1875, an action of ejectment was begun in Clearfield county by G. R. Kinports against Thomas Tozier, for the part of the land in that county, to compel the payment of said unpaid purchase money.

On May 29, 1875, by an assignment under seal reciting that John W. Williams had that day indorsed eight certain promissory notes, each for $1,890.36, payable in 4, 6, 9, 12, 15, 18, 21 and 24 months, respectively, aggregating $15,122.58, the said G. R. Kinports, to secure said Williams against said indorsements, transferred to him the several payments and instalments of the purchase money due from said Tozier, " together with all my interest and legal estate in the said land with right to

proceed in his own name and right for the collection of the same by ejectment or otherwise, with like force and effect as I might or could do if this agreement were not made."

On August 11, 1876, the judgment No. 485 September Term 1876, for $3,321.80 in favor of Porter Kinports against G. R. Kinports was entered in the court of Common Pleas of Clearfield county, upon a note dated July 28, 1876. Upon this judgment, a scire facias to revive was issued on August 9, 1881, and returned, tarde venit; and afterwards, June 16, 1882, the alias scire facias was issued on which this trial was had.

On October 14, 1876, by an assignment under seal reciting that the eight promissory notes mentioned in the foregoing assignment of G. R. Kinports to John W. Williams were then held by Jonathan Boynton, said J. W. Williams by provisions of like character with those of the foregoing assignment to him, transferred to Jonathan Boynton all his estate and interest in the lands sold by G. R. Kinports to Thomas Tozier, and all the unpaid instalments of purchase money, with the right to collect the same in such form as he might think most advisable, with like force and effect, etc; " This assignment being made by me and accepted by said Jonathan Boynton as collateral security for the payment of the said eight several promissory notes," etc.

On January 22, 1878, Jonathan Boynton, as assignee of the interest of G. R. Kinports, was made a co-plaintiff on the record of the ejectment to No. 378, March Term 1875, above mentioned, and on the same day a verdict was taken for the plaintiff for the premises described in the writ, to be released on payment by defendant therein, Thomas Tozier, in one day thereafter, of $15,510.00, and on January 25, 1878, judgment was entered on this verdict.

On April 29, 1878, a writ of habere facias possessionem was issued upon this judgment in ejectment and on July 17, 1878, possession delivered to Jonathan Boynton.

On April 5, 1882, Jonathan Boynton by agreement contracted to sell the land to Joseph A. Gray, by whom possession was taken and retained under the contract. After crediting upon the amount of the eight notes held by Jonathan Boynton, the price for which the land was sold, and all that was realized out of it for timber, etc., and all that was paid by any one upon

said notes, there still remained due upon the notes, as claimed by the defendant, an unpaid balance amounting with interest to $11,000 or $12,000.

In his rebutting case, the plaintiff offered to prove by Porter Kinports, the witness on the stand, and others, that the debt, for which the judgment note, dated July 28, 1876, for $3,321.80, (and upon which the original judgment in this case was entered) was given, was contracted prior to May 29, 1875, and the amount was owing to said plaintiff by G. R. Kinports, on and before May 29, 1875: this for the purpose of showing that the debt for which the judgment note was given, was in existence before the assignment of G. R. Kinports to John W. Williams.

Defendant's counsel object to the offer: 1. That it is not admissible in rebuttal. 2. That it is irrelevant and immaterial.

By the court: Now, September 6, 1887, we sustain the objections, not because the offer is not rebuttal, but for the reason that it is incompetent.[1]

The court, KREBS, P. J., charged the jury and answered the points presented as follows:

. The issue you are sworn to try, Porter Kinports, plaintiff, and Jonathan Boynton, defendant, involves a controversy which in its nature is an important one, not only as to the amount of money involved, but the principle of law which necessarily is involved therein. The proceeding is what is known in law as a scire facias, to revive and continue the lien of a judgment which Porter Kinports, plaintiff, in this issue, had against one G. R. Kinports.

The facts in the case are not disputed on either side. It is not denied that this plaintiff had a judgment note bearing date July 28, 1876, due at one day, and that it was entered on August 11, 1876, upon the records of this county, thereby becoming a lien against G. R. Kinports, if he had any estate or interest in land at that time, upon which any judgment could become a lien.

It is not disputed, but seems to be taken as a matter of fact by both parties to this issue, that about or before October 8, 1874, G. R. Kinports was the owner in fee simple of real estate situated in this county, and part of it in Cambria county;

Charge of Court below.

that on October 8, 1874, he entered into a written contract with Thomas Tozier, by the terms of which he agreed to sell his title in that land to Thomas Tozier, for a consideration amounting to $22,500. A portion of this purchase money was payable at ten, thirty and sixty days. These amounts thus stipulated in the contract to be paid at these times it would seem were paid, thus reducing the balance of the purchase money due upon this contract to $16,500, $1,500 of which was payable in six months, $7,500 in one year, and $7,500 in two years.

On March 9, 1875, an action of ejectment was brought in the name of G. R. Kinports against Thomas Tozier, and the parties in possession of this land under him, he having taken possession under this contract, and begun the cutting of timber, to compel a specific performance of this contract thus entered into on October 8, 1874. It is not very material in this case what was done in that action of ejectment. It does appear that sometime afterwards, several years, perhaps, or more, a verdict was entered in favor of the then plaintiffs against Tozier, for the premises, to be released on the payment of the balance of the purchase money, fixed by that contract, in one day. The money was not paid, and a writ of possession was issued, and the possession of that property under this proceeding was delivered to Mr. Boynton, the defendant in this case. That delivery of possession took place July 17, 1878.

Subsequent to the entry of the judgment by Porter Kinports against G. R. Kinports, on August 11, 1876, a writ of scire facias to revive the lien of that judgment was issued on April 9, 1881, which would be within five years from the date of its entry, and would continue any lien that it had upon any real estate or interest in real estate owned by G. R. Kinports, at the time it was entered. Mr. Boynton was named as terre tenant in that writ. The sheriff, as we remember, made no service of the writ, and returned it, tarde venit. It came to his hands too late to serve. An alias scire facias was issued on June 16, 1882, which was subsequently served on Mr. Boynton as terre tenant, and under proceedings had in that judgment which are not necessary to recite here, this issue is raised, which we are trying.

The defendant has proven, (and it is to be taken as admitted

because there has been no denial of it; the testimony was that of reputable witnesses whom we are bound to believe when their testimony is neither denied nor their credibility attacked,) and has offered in evidence papers to show that the balance of purchase money, amounting to $16,500, that was due on the contract from Thomas Tozier, the purchaser, to G. R. Kinports, was assigned on May 29, 1875, to John W. Williams, of Indiana county. He (Williams) subsequently on October 14, 1876, assigned all his interest, which he received by virtue of the previous assignment, to Mr. Boynton.

The whole question in this case turns on the legal rights of these parties under those papers and those assignments. There is no question here but that these assignments were made for a valid and sufficient consideration. Nor is it disputed or denied that the notes mentioned in these agreements, for which these assignments were made, to indemnify and secure Mr. Williams for his assignment of May 29, 1875, have not been paid by G. R. Kinports, or any of the other parties to those notes; so that Mr. Williams has become responsible, and if he has not already paid them, is liable to pay them. It is also admitted, so far as this case is concerned, that after applying all the moneys that were received by any of the parties holding the paper, that there yet remains due and unpaid upon them a consideration of from ten to twelve thousand dollars. There is no evidence, in this case, gentlemen of the jury, that the plaintiff in this case, or G. R. Kinports, or any one for him, has ever offered to pay this balance, or to pay these notes.

As was said by the counsel in their argument, it is principally a question of law for us to consider and ascertain the rights of these parties under these writs and assignments. If we err in our conclusions, of course the parties have a complete and adequate remedy, and our mistake can be ascertained and corrected.

[Now, gentlemen of the jury, it has been contended in this case, very ably and very earnestly, that this paper of May 29, 1875, in its legal incidents and effects is a mortgage, and, not having been placed upon record, as required by the act of 1820, known as the Recording Act, that therefore, it has all the infirmities of an unrecorded mortgage; and, not having been placed upon record, and Mr. Kinports having put his judgment

upon record, that it has a prior and legal right as a lien upon this remaining alleged estate of G. R. Kinports. With this contention we find ourselves unable to agree. We do not think that the assignment of this purchase money constitutes that instrument a mortgage, or such an instrument, as, if not recorded, attaches to it all the infirmities of an unrecorded mortgage.] [2]

[At the time this judgment was entered, there was no remaining beneficial interest in G. R. Kinports. He had sold the land to Thomas Tozier; he held the legal title simply as trustee for him, and, so far as he himself was concerned, could use it to enforce the payment of the purchase money, but when the purchase money was paid to him, he was bound to convey. When he (Kinports), assigned this purchase money to John W. Williams, it drew with it all the security that the legal title gave to G. R. Kinports, just as the assignment of a paper secured by a mortgage carries with it the mortgage, although it is not marked assigned at all. So that when this assignment was made to Mr. Williams, whether it was made absolute or made to secure him and indemnify him against the payment of those notes, there remained no interest in G. R. Kinports on which this judgment of Porter Kinports could attach, except the naked legal title, with the possibility that when these notes were paid, the assignment would revert to G. R. Kinports, and in such an event, his (Porter Kinports') judgment would attach to that interest thus re-vested in him. It depended upon the happening of a contingency which did not happen; therefore, Porter Kinports had no lien upon anything except the naked legal title which remained in G. R. Kinports. He might have had a right to pay these notes, or tender payment of them, and demand a conveyance to him, and thereby have secured something upon his judgment to which his lien would attach, but it is not shown or claimed that anything of the kind was done.] [3]

[We instruct you as a matter of law, under the evidence in this case and under the facts, that there was no lien acquired by his judgment further than that upon the naked legal title, and that stood to the use of John W. Williams, unless these notes were paid; they not having been paid, that assignment carries with it, in legal effect, that legal title, and that legal

Charge of Court below.

title, we think, is vested by subsequent assignment in Mr. Boynton. There was no title in G. R. Kinports, against which the lien of this judgment can be revived, so as to give it legal effect. We instruct you under these facts and circumstances, and under the law as we conceive it to be, to find a verdict for the defendant.] [4]

The plaintiff's points are answered:

1. That under the undisputed evidence in this case, prior to October 8, 1874, Gideon R. Kinports was the owner of a tract of land situated in Burnside township, Clearfield county, Pa., containing 300 acres, more or less, against which this judgment is sought to be revived.

Answer: Affirmed.

2. That under the agreement of October 8, 1874, between Gideon R. Kinports, and Thomas Tozier, an estate in said land remained to the said G. R. Kinports, which was susceptible of being conveyed or mortgaged, and upon which the lien of a judgment against said Kinports would attach.

Answer: That is true, until the purchase money was assigned on May 29, 1875, and from and after that date the judgment was a lien upon nothing but the naked legal title which stood to the use of Williams, and those claiming under him under these assignments. [5]

3. That the agreement or paper writing dated May 29, 1875, between G. R. Kinports and John W. Williams, was a conveyance of the estate of said Kinports in said land, as a security for, or an indemnity against the liability which said Williams incurred, by indorsing the eight notes mentioned in said agreement, and was not an absolute, unconditional conveyance of said estate or interest in said land by Kinports to Williams; and, being a conveyance of said estate or interest in said land as security, it was in law but a mortgage.

Answer: For answer to this point we refer to our general charge. [6]

4. That said agreement, assignment or paper writing, of May 29, 1875, never having been recorded, it was in law an unrecorded mortgage, and gave to the said John W. Williams or his assignee, Jonathan Boynton, no lien upon the estate of said G. R. Kinports, in said lands, as against a judgment entered against said G. R. Kinports, for a debt existing prior to May 29, 1875.

Answer: Denied.[7]

5. That, the judgment of Porter Kinports against G. R. Kinports having been entered in the Common Pleas of Clearfield county, August 11, 1876, became a lien upon the estate, right, title and interest of G. R. Kinports in the lands aforesaid.

Answer: For answer we refer to our general charge.[8]

6. That, under all the evidence in the case, the verdict of the jury should be for the plaintiff, against Jonathan Boynton as terre tenant, and that judgment should be entered upon said verdict de terris.

Answer: Denied.[9]

The jury found "for the defendant under the instructions of the court," and judgment was entered on the verdict. Thereupon the plaintiff took this writ, assigning for error:

1. The refusal of the plaintiff's offer.[1]

2–4. The parts of the charge embraced in [ ][2 to 4]

5–9. The answers to the plaintiff's points.[5 to 9]

10. The binding instructions to the jury to find in favor of the defendant.

*Mr. Frank Fielding*, *Mr. John H. Orvis* and *Mr. J. Frank Snyder*, for the plaintiff in error:

1. It is admitted that prior to October 8, 1874, G. R. Kinports was the absolute owner of the land in question, in fee. In his contract of sale to Tozier, there is nothing to take the case out of the ordinary rule of a sale by articles, the vendor retaining the title as security for the unpaid purchase money. In the title thus left in G. R. Kinports, he still had such an estate in the land as might be conveyed by him by deed, could be mortgaged by him, and would descend to his heirs upon his death; he had not only the legal title, but an actual interest to the extent of $16,500 purchase money: McMullan v. Wenher, 16 S. & R. 18; Fasholt v. Reed, 16 S. & R. 266; Catlin v. Robinson, 2 W. 373; Wilson v. Stoxe, 10 W. 434; Stewart v. Coder, 11 Pa. 90; Vincent v. Huff, 8 S. & R. 388.

2. The assignment and transfer by G. R. Kinports to John W. Williams, on May 29, 1875, was not an absolute sale. The consideration rebuts that position, as well as the plain and explicit words of the instrument. The transaction was a pledge of the interest of G. R. Kinports in this land to Williams, as a

security or indemnity; it was a mortgage; only this, and nothing more: Myers's App., 42 Pa. 518; Kellum v. Smith, 33 Pa. 158; Harper's App., 64 Pa. 315; Rhines v. Baird, 41 Pa. 256; McClurkan v. Thompson, 69 Pa. 305; Fessler's App., 75 Pa. 483; Filon v. Knowles, 2 W. N. 226. And when Williams comes to make the assignment to Boynton, on October 14, 1886, they put the character and purpose of the instrument beyond a doubt: "This assignment being made by me and accepted by Jonathan Boynton as collateral security for the payment of said eight several promissory notes," etc.

3. An unrecorded mortgage is good only against a subsequent lien creditor, who had notice of the unrecorded mortgage prior to the time his debt was contracted: McLaughlin v. Ihmsen, 85 Pa. 364; Lahr's App., 90 Pa. 507; Corpman v. Baccastow, 84 Pa. 363; Phillipsburg's S. Bank's App., 10 W. N. 267; Fredericks v. Corcoran, 100 Pa. 413; Hulings v. Guthrie, 4 Pa. 123; Russell's App., 15 Pa. 319; Fessler's App., 75 Pa. 483.

4. G. R. Kinports still has an interest in the land claimed by Boynton to the extent of the purchase money unpaid by Tozier. His equity of redemption has never been cut off by a scire facias sued out on the mortgage Boynton holds. No judicial sale has ever been made of that interest. He cannot by any private agreement with Boynton authorize the latter to sell the land to Gray, or any one, and keep the proceeds on account of the notes he holds.

*Mr. Joseph B. McEnally* and *Mr. Daniel McCurdy*, for the defendant in error:

1. The following things are best presented by a mere statement: *a.* A judgment creditor is not a purchaser for value. He is not protected by the recording acts. His judgment is a lien only on what the debtor has. His rights rise no higher than those of his debtor. *b.* The common law rule is: the first in time is first in right. *c.* If the effect of a mortgage or deed is, in any way, postponed until it is recorded, it must be by virtue of some act of assembly; and the party alleging this must show it. *d.* The act of March 18, 1775, 1 Sm. L. 422, refers only to deeds and conveyances, and does not mention mortgages. It protects only subsequent bona fide purchasers

and mortgagees, not judgment creditors. *e.* The recording acts relating to mortgages are those of May 28, 1715, 1 Sm. L. 95, and of March 28, 1820, 7 Sm. L. 303. *f.* The rule to be gathered from the words of the recording acts and the decisions upon them, is this : Against a judgment creditor a prior unrecorded deed or conveyance is good. A mortgage is also good, except a mortgage executed for lands, tenements or hereditaments within the provisions and meaning of the act of 1820 ; and even such a mortgage is good against a judgment creditor, if the creditor had previous notice of the mortgage. *g.* Porter Kinports, the plaintiff, is simply a judgment creditor of G. R. Kinports. The assignment of G. R. Kinports to Williams of the purchase money due on his sale of real estate to Tozier, is prior to Porter Kinports' judgment.

2. It is not true, as a general proposition, that the interest of a vendor in land, holding only the legal title with the right to unpaid purchase money, is real estate. It is so for certain purposes, but beyond that it is regarded and treated, under the law in Pennsylvania, as personal estate. While the vendor retains the legal title as security for his purchase money, the two together are considered as real estate, so far as respects the lien of judgments that may be then entered against him, and the collection and distribution of the money upon those judgments. But beyond this and for other purposes, the interest of the vendor is treated as personal estate, the right to the land as real estate being vested in the vendee : Leiper's App., 35 Pa. 420; Longwell v. Bentley, 23 Pa. 99.

3. A mortgage is a conditional conveyance of the land itself. After a vendor has sold the land he does not have it to convey, and therefore it is impossible for him to convey it either by deed or mortgage. The conveyance of a mere purchase money right is not a conveyance of land, and does not amount to a mortgage within the meaning of the law or of the recording act of 1820 : 2 Bl. Com. 106, 157 ; 4 Kent, Com. 12th ed., 4*, 136*; Act of May 28, 1715, § 8, 1 Sm. L. 95 ; Act of March 28, 1820, § 1, 7 Sm. L. 303.

4. The assignment to Williams, having been prior in time, was therefore superior in right to the judgment of Porter Kinports, and under the facts of the case there was and is nothing left in the nature of real estate in the Tozier property

upon which the judgment can hold a lien against Jonathan Boynton named as terre tenant: Rodgers v. Gibson, 4 Y. 111; Cover v. Black, 1 Pa. 494; Britton's App., 9 Pa. 176; Ebbert's App., 70 Pa. 82; Heister v. Fortner, 2 Binn. 40.

OPINION, MR. JUSTICE PAXSON:

This proceeding in the court below was a scire facias to revive and continue the lien of judgment No. 485 September Term 1876, in which Porter Kinports was plaintiff and Gideon R. Kinports, defendant. This judgment was entered of record August 11, 1876. On November 17, 1885, a judgment for want of an affidavit of defence was entered against the said defendant and Jonathan Boynton, as terre tenant, in the scire facias. Subsequently an application was made to the court below by Boynton to strike off the judgment as to him upon the ground that he was not a terre tenant, and that the judgment had never been a lien upon the particular real estate in controversy. We need not refer to these proceedings in detail; they are not very clearly stated, but appear to have resulted in an issue to try this question, and a verdict in favor of the terre tenant in conformity to a binding instruction of the court.

The question we have to determine is, whether Gideon R. Kinports had such an interest in this particular real estate at the time the original judgment was entered as was bound thereby, and if so, whether the same was bound by the judgment on the scire facias as against Jonathan Boynton as terre tenant.

The real estate which the plaintiff claimed was bound by the lien of his judgment, consisted of a tract of land of about two hundred and sixty-five acres. It is undisputed that Gideon R. Kinports was the owner of this land in 1874, and that on October 8th of that year he entered into a written contract with Thomas Tozier by which he agreed to sell the said tract of land to the said Tozier for the consideration of $22,500 payable by instalments; that of these instalments, $6,000 only was paid; that on May 29, 1875, Gideon R. Kinports, by a writing duly executed, assigned the purchase money due him from Tozier, as well as his legal title to the said real estate, to John W. Williams, and that the said Williams on October 14,

1876, assigned the same to Jonathan Boynton. Each of these assignments upon its face shows that it was as collateral security merely, and that the sum intended to be secured was several thousand dollars less than the purchase money remaining unpaid. Neither assignment was recorded. We may further state as a part of the history of the transaction, that on March 9, 1875, G. R. Kinports brought an action of ejectment against Thomas Tozier, upon the legal title, to enforce the payment of the balance of the purchase money, to which action the name of Jonathan Boynton was subsequently added as a plaintiff. This action was so proceeded with that a verdict was rendered for the plaintiff to be released upon the payment of $15,510. A judgment was entered upon this conditional verdict, which subsequently became final, and a writ of habere facias possessionem was issued April 18, 1878, and the writ executed by delivering the premises to Jonathan Boynton.

The legal effect of the agreement between Gideon R. Kinports and Thomas Tozier, of October 8, 1874, was to place the equitable title in Tozier, while the legal title remained in Kinports as security for the unpaid purchase money. A judgment in this state binds the equitable as well as the legal title, hence it needs neither argument nor the citation of authority to show that the interest of Kinports or Tozier, in the premises in question, would be bound by the lien of a judgment so long as the contract remained unexecuted, and to the extent that it was unexecuted.

If, on August 11, 1876, the day when the judgment, No. 485 September Term 1876, was entered, Gideon R. Kinports had parted with his entire interest in the property, there would have been nothing to which the judgment could have attached as a lien. The assignment to Williams, however, was not an absolute conveyance of either the legal title or of the unpaid purchase money. It was, as before stated, merely an assignment as collateral to secure a debt less than the purchase money remaining unpaid, while the assignment from Williams to Boynton was of the same character. This left a resulting interest in Kinports which was subject to the lien of a judgment. A judgment obtained against the vendor of land, after the execution of an article of agreement, but before the execution of a deed, binds the legal estate of the vendor; and on a sale

under such judgment the sheriff's vendee stands precisely in the situation of the original vendor, and is entitled to the unpaid purchase money, payment of which he may enforce by ejectment against the terre tenant: McMullen v. Wenner, 16 S. & R. 18; Fasholt v. Reed, 16 S. & R. 266; Catlin v. Robinson, 2 W. 373; Wilson v. Stoxe, 10 W. 437; Stewart v. Coder, 11 Pa. 90.

The right which Gideon R. Kinports had in the real estate after the assignment to Williams, was the right to a reconveyance of the property after the payment of the debt which the assignment was intended to secure. It appears that the debt has not been paid, and the learned judge below was of the opinion, that because it has not been paid, G. R. Kinports had a mere possibility which has never happened, and therefore he had no interest when the judgment was entered against him. But he had a right to pay the money and thus redeem the pledge, and when so redeemed, to a reconveyance or return of the property pledged. His judgment creditor would have the right to sell the property subject to the pledge, and the purchaser at such sale would be entitled to stand in Kinports' shoes, and redeem. Whether such right would be of any value is not to the purpose. There was an interest, valuable or otherwise, to which the lien of the judgment attached, and we are of opinion it was error to instruct the jury to find for the defendant.

Moreover, we are of opinion that the assignment by Gideon R. Kinports to John W. Williams was in legal effect a mortgage. It was an assignment of the purchase money of the real estate therein described and mentioned, " together with all my interest and legal estate in the land," etc., as collateral security merely. This interest was of such a character as before remarked, as to be liable to the lien of a judgment. It was equally capable of being conveyed or mortgaged. It was assigned to Williams as a mere pledge. It is well settled in this state that an assignment or conveyance to secure an existing debt or future advances, is but a mortgage without regard to its form. It is so, if absolute upon its face: Kellum v. Smith, 33 Pa. 158; Rhines v. Baird, 41 Pa. 256; Myers's Appeal, 42 Pa. 518; Harper's Appeal, 64 Pa. 315; McClurkan v. Thompson, 69 Pa. 305; Fessler's Appeal, 75 Pa. 483.

We hold that the assignment in question is but an unrecorded mortgage. What effect it may have in any future contest is a matter not now before us. It is sufficient to say that it leaves no doubt in our minds as to the right of the plaintiff to revive his judgment against this land, and Jonathan Boynton as terre tenant, to the extent of Kinports' interest, whatever it may be.

We think that in view of what was said in McLaughlin v. Ihmsen, 85 Pa. 364*, it was competent for the plaintiff to show that the debt represented by his judgment was prior in point of time to the assignment to Williams, and that it was error to reject the evidence referred to in the first assignment. We also sustain the second, third, fourth, fifth, sixth, seventh, eighth and tenth assignments.

Judgment reversed, and a venire facias de novo awarded.

---

* "And, even though unrecorded, it [a mortgage] is good against the mortgagor, himself, or his alienee, or mortgagee with actual notice, or a judgment creditor with notice, before his debt is contracted:" AGNEW, C. J.