Thomas Deregibus *vs*. Silberman Furniture
Company, Inc.

Hinman, Banks, Avery and Brown, Js.*

Argued June 9th—decided July 10th, 1936.

* By agreement of counsel the case was argued before and decided
by four judges.

*Frank Rich,* with whom was *Nathan B. Silberman,* for the appellant (defendant).

*Maurice J. Buckley,* with whom, on the brief, was *John A. Walsh,* for the appellee (plaintiff).

BROWN, J. In this action to enjoin the defendant from blocking a passageway over its land which the plaintiff claimed a prescriptive right to use in passing between the street and the rear part of his property adjoining that of the defendant, and for other equitable relief, the following facts material to this decision appear in the finding: The plaintiff owns a tract of land adjoining the tract next west owned by the defendant on the northerly side of State Street in Stamford. The boundary line between the two properties extends northerly sixty-five feet at right angles to State Street, thence easterly on a right angle twenty-nine feet, and thence northerly on a left angle intersecting the rear line of the properties on the north. The brick building on the defendant's land and the stucco building on the plaintiff's land have been standing for about thirty years and are so located that there is an open space some twenty feet wide between them along the sixty-five foot line, and a similar space about sixteen feet wide along the twenty-nine feet line, forming the passway in question leading between State Street and the open space at the rear of the plaintiff's land north of his building, and east of the rear part of the defendant's building. Of the part that is twenty feet wide, about eight and two-thirds feet lies west of the boundary line and eleven and one-third feet east of it. Of

the part that is sixteen feet wide, about eight feet lies north and eight feet south of the boundary line, except that an addition built by the plaintiff in 1924 near the easterly end comes to within two feet of the line at that point. The plaintiff has a garage on the northeast corner of his land.

Up to June 29th, 1904, title to both tracts was in a common owner and the passageway was in existence at that time. On that date the tract now owned by the plaintiff was deeded to Fred Berg, who on October 1st, 1904, conveyed an undivided one-half interest therein to John J. Looney. July 28th, 1905, Shannon and McNally were deeded the tract now owned by the plaintiff. From the fall of 1905 until April 25th, 1922, when they deeded it to the plaintiff, the property was occupied by their tenants. Rosa and Romano had a lease of it from 1905 until June 1st, 1913, conducting a saloon on the ground floor in the westerly part of the building, and from 1908 on, the plaintiff, as their sublessee, occupied the easterly part of the ground floor as a restaurant and the rooms upstairs where he has ever since lived. June 1st, 1913, the plaintiff took a lease in his father-in-law's name, of the entire property, for three years and occupied thereunder, and from June 1st, 1916, until April 25th, 1922, he continued to occupy the premises as a tenant from month to month. Since the fall of 1905 this passageway has been used by the tenants during their occupancy of the building now owned by the plaintiff, and by those who had occasion to make deliveries to them, and by the plaintiff himself as a tenant from 1908 until April 25th, 1922, and thereafter up to the present as owner, for means of ingress and egress to the rear of these premises. This use has included the driving of vehicles in and out between the barn or garage on the rear of the plaintiff's premises and State Street as well as

other incidental uses, and has been continuous and uninterrupted in the manner stated since 1905. It has been open, notorious, and adverse and under a claim of right as against the successive owners of the defendant's property.

The defendant acquired title to its property May 18th, 1929. No deed in the chain of title of either property mentions any right of way over this passway in question. After receiving its deed the defendant demanded of the plaintiff an annual rental of one dollar for the use of the way, which he refused to pay, claiming a right of way. After negotiations for the purchase by the plaintiff of the defendant's land included in the passway and also that on which part of its building stood failed, the defendant set four posts along the twenty-nine foot boundary line preventing further use of the way by the plaintiff, and this action was brought.

The defendant has assigned as error the court's finding of certain of the facts above recited, and its failure to find certain other facts. As to the former, while the evidence is conflicting as to some of them, in each instance the court's finding as made is supported by sufficient evidence. As to the latter, the defendant is not entitled to have any fact added which can materially affect the result. In this connection it has complained of the court's refusal to find an interruption of the user of the way by the tethering of horses to the east wall of the building now owned by the defendant, prior to 1921, by the American Express Company, the then occupant of the property, and also of its refusal to find an interruption thereof by the deposit of building materials along this wall by the Maguires as owners during 1921 and 1922, incidental to improvements in the property. The court has expressly found, as the evidence amply warranted, that neither of these things

constituted an interruption of the user, and further that the only interruption since 1908 resulted from the defendant's above mentioned setting of the posts, which were forthwith removed pursuant to a temporary injunction issued in this action. The court did not err in its finding of the facts.

The other errors assigned relate to the court's conclusion that an easement of way by prescription now exists appurtenant to the plaintiff's property over the land of the defendant, and raise the question whether upon the facts found this conclusion can stand. The fundamental question here involved, concretely stated is this: Has the adverse use of this way by the plaintiff, from June 1st, 1913, to April 25th, 1922, as tenant, and from the latter date to 1934 as owner of the fee, created an easement of way by prescription appurtenant to his property?

Since no way appurtenant can be created without a dominant as well as a servient estate, the first inquiry here is as to what was the dominant estate, appurtenant to which the plaintiff claimed to be using the way, prior to receiving a deed of the fee of his land. It must have been either his own leasehold interest, or the estate in fee then owned by McNally and Shannon, his lessors. But one who is in possession of land as a tenant at will or for years cannot prescribe in himself. 19 C. J. 876, § 20. The rule and its reasons have been thus stated: "If the defendants, or those under whom they claim, were in possession as tenants for life, for years, or at will, they could not prescribe in themselves by reason of the imbecility of their estates. A prescription in a *que estate* must always be laid in the person who is seized in fee simple. 2 Blk. Com. 265." *Perley* v. *Hilton*, 55 N. H. 444, 447. The plaintiff, therefore, as tenant, could only have claimed to use the way as appurtenant to the estate in fee in his

lessors. The next question to be determined is whether his adverse use for the first nine years of the statutory period predicated upon this claim, gave rise to an inchoate estate by prescription in them, which could pass to him by their deed of the fee, and be tacked to the subsequent period of his adverse use as owner for the necessary balance of the total fifteen years required.

The briefs of counsel afford no assistance in the solution of this question. The cases relied upon by the plaintiff hold that where a lease to a tenant includes in the land leased that which the landlord subsequently claims to have acquired by virtue of his tenant's occupancy, the occupation by the lessee is that of the lessor for the purposes of the statute. *Attorney General* v. *Ellis,* 198 Mass. 91, 84 N. E. 430; *Holtzman* v. *Douglas,* 168 U. S. 278, 285, 18 Sup. Ct. 65; *Ramsey* v. *Glenny,* 45 Minn. 401, 48 N. W. 322. Obviously this principle is not applicable here, where the court's finding does not disclose that any of the leases of the land now owned by the plaintiff, prior to the deed to him in 1922, included any right of way over the defendant's land. Unless the lease is effective to cover the right of way, the plaintiff's adverse use of the way under it cannot enure to the benefit of the lessor. 2 C. J. 74, § 49. The distinction is well emphasized in a case of adverse possession in these words: "If one person disseizes another of land, and while in possession leases the land to a tenant who continues to occupy it under his lease, the adverse possession of the tenant may be tacked to that of the landlord, and the possession of the tenant may be said to be that of the landlord; but if the landlord never had possession of the land, nor claimed title to it, and did not include it in the lease, the possession of the tenant beyond the boundaries of the land contained in the lease is not the possession of the landlord, even although the tenant

believes that he is occupying only the land demised. *Melvin* v. *Proprietors of Locks and Canals,* 5 Met. [46 Mass.] 15." *Holmes* v. *Turner's Falls Co.,* 150 Mass. 535, 547, 23 N. E. 305, 310, 6 L. R. A. 283, 289.

It is true that it has been held in cases of this nature that the tenant's possession may be the possession of the landlord although the lease did not expressly include the land in question, where the landlord has represented to the tenant that such land was within the lease, or the landlord knew the tenant was occupying it and assented thereto, or there were other circumstances justifying the implication that it was occupied under and by virtue of the lease (*Capps* v. *Merrifield,* 227 Mich. 194, 198 N. W. 918), "but the tenant cannot, without the direction or even the knowledge or consent of the landlord, effect a disseisin in his favor or originate adverse possession." *Bayne* v. *Brown,* 60 Ore. 110, 112, 118 Pac. 282. See also *Doe dem. Smyth* v. *Leavens,* 3 U. C. Q. B. 411; *West* v. *Price's Heirs,* 2 J. J. Marshall (Ky.) 380. The finding is devoid of any facts which would bring this case within the rule last stated.

Clark, C. J., in *Capps* v. *Merrifield,* supra, well states the reason which lies behind the rule that the possession of the tenant is not that of the landlord unless the land in question is within either the express or implied terms of the lease, as follows (p. 196): "If the tenant possesses land as tenant, his possession enures to that of the landlord. But if he occupies it, not under the lease, but as a trespasser upon the land of a stranger, the trespass is his, and the penalties and compensations, if any, of the trespass are his also. We think of no principle by which the landlord might be held liable for such unauthorized trespass of his tenant, and none by which he may claim benefit because of it." See also *Elwell* v. *Barbrick,* 279 Mass. 272, 277, 181 N. E. 184, 186.

From what has been said it is apparent that the use of this way over the defendant's land by the plaintiff as tenant could not enure to the benefit of McNally and Shannon. Therefore no inchoate right of way by prescription passed to the plaintiff by their warranty deed to him, and the period of his use of the way as tenant could not be tacked to his period of use thereof as owner. The statute first began to run effectively in the plaintiff's favor against the defendant in 1922. Therefore the statutory period had not run when the defendant interrupted the plaintiff's use shortly before this action, brought in 1934, and the court erred in concluding that the plaintiff had acquired a right of way by prescription appurtenant to his land.

There is error and a new trial is ordered.

In this opinion the other judges concurred.